### WHITING, ESTATE OF, In Re

Probate Court, Franklin Co

No 72632.   Decided March 21, 1938

208

Howard Middleton, of the Tax Commission of Ohio.

Tolles, Hogsett & Ginn, Cleveland.

## OPINION

By McCLELLAND, J.

This matter comes on to be heard upon the exceptions filed herein to the determination of the inheritance tax assessed upon the passing of certain bequests from the testatrix to Kenyon College.

Ellen G. Whiting died on October 11, 1934. She left a last will and testament, Item seven of which is in words as follows:

"ITEM SEVENTH: All of the rest, residue and remainder of the property of which I die possessed, whether real, personal or mixed, of every kind and description and wheresoever situate, I hereby give, devise and bequeath to Kenyon College, of Gambier, Ohio, a corporation incorporated under the laws of the State of Ohio, and to its successors forever. Said rest and residue of my estate, both principal and income then remaining, to be and constitute a fund known as "THE MATHEW MATHEWS GILBERT FUND", and I direct that the income derived therefrom, and also any income from the loans hereinafter mentioned, be used by the Board of Trustees of the said Kenyon College, in making loans either at interest or without interest, to worthy students in the Theological Department of the said Kenyon College, formerly incorporated and known as the Theological Seminary of the Protestant Episcopal Church of the State of Ohio; I direct that such loans be made only to such students in said department as in the opinion of said Board of Trustees may thereby be enabled or aided to pursue their theological studies without reference to any ability to repay said loans. I further direct that no part of the original principal of said "THE MATHEW MATHEWS GILBERT FUND" be loaned in said manner, but that said Board of Trustees shall not be in any manner liable or responsible for any losses arising through failure or impossibility of collecting any of said loans so made from the income of said fund. For the better enjoyment of said property by

the said Theological Department and for the benefit of said fund, I give to the said Kenyon College, its successors and assigns, power, through its duly authorized Trustees, officers or agents, to sell, lease or exchange said property, real, personal or mixed, or any part thereof, on such terms and conditions and in such manner as to them shall seem best, and deeds or other instruments necessary, acknowledge and deliver, but the property which may be taken in the exercise of said power of exchange and all proceeds of said power of sale shall be, constitute and remain a part of the principal of said fund to all intents and purposes."

Upon an application for the determination of the inheritance tax this Court found that the passing of the property under the above named item was subject to an inheritance tax, and determination made accordingly. Exceptions were filed within the proper time by the trustees of Kenyon College, contending:

First, that Kenyon College is a public institution of learning within the State of Ohio, and any property passing to it is not subject to the inheritance tax laws of the state.

Second, that Kenyon College is an institution for purposes only of public charity and wholly within the State of Ohio, and that the devise of any property to it is not subject to an inheritance tax in the State of Ohio.

Upon the hearing of this matter it was agreed that the matters of fact should be stipulated in a written statement. According to the agreement a Stipulation of Facts was deposited in this Court, which stipulation of course the Court adopts as a finding of fact and also as a part of this decision. We believe it advisable to recite the essential facts as follows:

"The Acts of Incorporation of Kenyon College and the Constitution of Kenyon College as amended 1912, and with all subsequent amendments are correctly set forth in the form hereto attached and certified by W. E. Camp, Treasurer of Kenyon College.

Kenyon College is divided into a Theological School and a Collegiate School, and both schools are open to students without regard to their religious affiliation or faith. The Theological School is an educational institution for the training of young men for the gospel ministry, free and open to all upon the same conditions, and is controlled and managed by a Board of Trustees elected pursuant to the provisions of the Constitution of the College.

Prior to 1912, certain Trustees of Kenyon College were elected by diocesan conventions in the Protestant Episcopal Church. Since 1912, the Trustees of Kenyon College have been elected by the Board of Trustees itself or by Alumni of the two Schools, with the exceptions of three ex-officio members of the Board. The President of the College, who is an ex-officio member of the Board, is a member of the Baptist Church.

Ellen G. Whiting died on October 11, 1934. During the school year of 1934-35, Kenyon College for the first time charged a tuition fee in the Theological School. The tuition fee was then and still is $100.00 per annum. Additional expenses for the school year 1934-1935 and for the current year 1937-1938 are as follows:

Board $240—($280 in 1937-38)
Heat and light 50
Incidental charge (for maintaining building occupied by the Theological School, including library therein) $ 20

At the time of Ellen G. Whiting's death the total annual charge for tuition, board, heat and light, and incidental charge was $410 and at the present time said total annual charge is $450.00. The maximum amount which the Board of Trustees of Kenyon College grants as a scholarship to an individual student in the Theological School is the annual charge of the School for tuition, board, heat and light, and incidental charges. Scholarships

in the Theological School are open to all students therein without regard to their religious affiliation or faith. During the past ten years the average amount of scholarship granted to a student in the Theological School during one year has been $350. On the basis of the College's previous income from its investments, the income on the property to be received under the Will of Ellen G. Whiting is expected to range from $1,000 to $1,200 per annum.

The fund left by Ellen G. Whiting is a scholarship fund i. e., a fund which is available for worthy students. In addition to the fund established by Ellen G. Whiting, other scholarship funds established for students in the Theological School bring in a total annual income ranging from $2,000 to $2,500.

In the past, the Theological School has turned away certain individuals who desired to matriculate therein and required financial assistance, for the reason that the School did not have sufficient funds to pay the expenses of such individuals.

The income from the fund to be established by Ellen G. Whiting and the income from other scholarship funds is not paid in cash to the students in the Theological School. It is merely available as a credit to the account of the individual student against College bills for tuition, board, heat and light and incidental charges.

All securities held in the present scholarship funds of the Theological School are issued in the name of Kenyon College, and pursuant to the provisions of Ellen G. Whiting's Will, any securities delivered to Kenyon College by the Executor of the Ellen G. Whiting estate will also be issued in the name of Kenyon College.

Kenyon College is located entirely within the State of Ohio and all of its educational work is carried on within the State of Ohio."

There are other stipulations of fact which are not particularly important which we do not deem necessary to incorporate in this decision.

Appended to the Statement of Fact and made a part thereof, is Kenyon College Bulletin No. 27 Supplement, containing Acts of Incorporation and the Constitution as Amended in 1912. Upon an examination of this document we find that Kenyon College was organized and later incorporated as a Seminary for the religious education of young men. Later a Literary and Arts College was added thereto, but from an examination of the history of Kenyon College we find its primary purpose was only for the religious education of young men through its Seminary, and that other departments were built up around that as a nucleus.

We also find that Kenyon College is supported entirely from gifts by its alumni and other friends, and also from the tuition and fees charged its students.

Counsel for both parties in this matter have called the Court's attention to a large number of cases, most of which were decided before the enactment of the present inheritance tax law, and most of which were cases determining whether or not property belonging to certain colleges were exempt from the operation of the property tax. It is our opinion that those cases are largely determinative of the question as to whether or not a college is an institution of learning. We are of the opinion that even though Kenyon College is under the supervision and control of a private corporation, and is in fact a private corporation and receives no income whatsoever from public taxation, it nevertheless is a public institution of learning. We are also of the opinion that it is an institution of public charity.

In examining the briefs of counsel for the contending parties, we feel that Kenyon College is essentially a public institution of learning, and is also a public charity, and that Counsel for the parties regard it so.

From an examination of briefs of counsel, and from their statements and their arguments in open court, it appears that the Tax Commission of

Ohio, takes the position that the limitations placed upon the use of the property passing under Item Seven of the Will of Ellen G. Whiting removes it from the operation of §5334 GC. We believe that this is the sole and only question to be determined in this case.

The essential provisions of §5334 GC are as follows:

"The succession to any property passing to or for the use of the State of Ohio, or to or for the use of a municipal corporation or other political subdivision thereof for exclusively public purposes, or public institutions of learning within this state, or institutions of learning within any state of the United States which state does not impose an inheritance, estate or transfer tax on property given, devised, or bequeathed by a resident thereof to an institution of learning within this state, or to or for the use of any institution for purposes only of public charity, carried on in whole or in substantial part within this state, shall not be subject to the provisions of the preceding sections of this subdivision of this chapter". * * *

It is to be noted at the outset that Kenyon College is an educational institution within the State of Ohio, and as we have said is a public institution of learning although supported by private contributions and fees paid by its students. By virtue of the fact that it is a public institution of learning, it is necessary that its activities be limited to a certain class of individuals.

There are three limitations placed upon public institutions of learning, so common in their application, and so universally known, that the courts may take judicial notice of them. Most public institutions of learning require that a student be eighteen years of age, and some will admit them as young as sixteen years of age. Another limitation is that students must have attained or complied with a certain minimum standard of academic education such as graduation from an accredited high school or similar educational qualifica-tions. A third requirement is one of moral character satisfactory to the authorities in charge of the college.

Can it be said that a public institution of learning, which for its own protection and for the good of those who avail themselves of its facilities, which places those restrictions upon its students and upon those who avail themselves of the benefit of its property, thereby takes itself out of the operation of §5334 GC? We think not. In our opinion it is necessary that any public institution of learning have certain restrictions as to persons who avail themselves of its benefits, and shall also put certain restrictions upon the expenditure of money left for its benefit.

Suppose Mrs. Whiting would have left her estate to Kenyon College generally, without putting any limitation upon the use of the fund. It certainly would be necessary for the trustees to allocate those funds to certain departments. Should they feel that the Theological School was in need of that fund and should the trustees then allocate that to the Theological School, would that act take it out of the operation of §5334 GC? We believe it would not.

Suppose Mrs. Whiting should have left her property to Kenyon College with direction that it be used for certain, definite, scientific research which would directly benefit only a few students. Would that limitation upon the use of the gift take it out of the operation of §5334 GC? We believe it would not.

Now, let us examine the restrictions which the testatrix has placed upon the use of the fund passing under Item Seven of her will. We find three restrictions.

First. It is restricted to the use of the Theological School.

Second. It is restricted to worthy students. Third. The worthy students would be chosen by the Board of Trustees

without reference to any ability to repay said loans.

There is one characteristic common to all limitations placed upon the use of this property by Mrs. Whiting, and that is that the limitations are in harmony with and for the purpose of promoting the ends for which Kenyon College was incorporated.

We cannot refrain from making this observation also, that the limitations and restrictions thrown around the use of the income from the fund created by her will, are limitations preventing the use of said property for private purposes, and which limitations are binding upon the trustees. The trustees, first. must confine the use of the property to students in the Theological School. Second, they must confine it to worthy students, and, in determining who are worthy they cannot take into consideration the ability, either in present or prospective to repay said loan. Mrs Whiting knew that the amount of the bequest was so small that the income therefrom would not support more than three or four students, and could not be spread over the entire student body in the Seminary. She could therefore have determined that the recipient of this fund might be chosen by lot, but she chose to determine it by a more sensible course of procedure, and provided that the Board of Trustees should confine the use of this fund to worthy students, and. in doing so, they were subject to the restriction that they could not take into consideration their present or future ability to repay the same.

Counsel for the Tax Commission cite **Tax Commission v Paxson**, reported at **118 Oh St 36.** Also the case of **Cleveland Trust Company, Exr. v Tax Commission of Ohio**, et, reported in **33 Oh Ap 323.** Through a supplementary brief the Tax Commission also calls our attention to the decision of Judge Lamneck of Tuscarawas County, rendered on February 16, 1938, in **Re: Estate of Phillip H. Sigrist.** In all of the cases cited by the Tax Commission. the courts held that the property passing was subject to the inheritance tax because of the fact that the trustees or persons having charge of the property had the right to choose the beneficiaries and thereby render the matter private, rather than public, in its nature. There is a fundamental difference between the facts as set forth in these three cases cited by the Tax Commission and the case at bar. In the three cases cited by the Tax Commission the testator created or set up a private or individual trustee and gave that private or individual trustee the right to choose the beneficiaries of the trust fund, but in the case at bar the testatrix chose a public institution of learning, and so restricted the use of the fund that it should be used to promote and carry out the purposes for which Kenyon College was organized and incorporated, and also restricted its use for the benefit of the students who complied with the admission requirements of the college, and she further restricted it to the use of the worthy students, and provided the means by which those worthy students might be chosen. In our opinion, the restrictions were such that the trustees of Kenyon College could not use the property for private purposes whatsoever.

Suppose one of the trustees had a favorite relative to whom he wished to give the benefit of this trust fund. This he could not do because of the restrictions placed upon the Board of Trustees, unless the favorite relative should meet the conditions prescribed. In our opinion, the testatrix so restricted the use of the fund as to make it entirely charitable and thereby relieve the public of educating certain young men in institutions supported by public taxation.

Counsel for the Tax Commission have called our attention to a rule of construction laid down by Judge Allen in the Paxson case, reported at **118 Oh St 41**, relative to the construction of the Exemption statutes. Judge Allen uses the following language:

"While there is authority contra, it is frequently held that one claiming

exemption of property from taxation must show that such exemption is within the terms of the Constitution and the statute. A claim of exemption from taxation by virtue of a statute is construed strictissimi juris. It must rest upon language in regard to which there can be no doubt as to the meaning, and the exemption must be granted in terms too plain to be mistaken. 26 Ruling Case Law 313: Humphries, Auditor v Little Sisters of the Poor, supra."

"Statutes exempting certain legacies from an inheritance tax should be strictly construed. To be exempt from an inheritance tax, a legacy must come within the strict letter of the statutory enactments. In re Rudge's Estate, 114 Neb. 335, 207 N. W. 520."

Counsel for the exceptor claimed that in cases involving bequests to charitable institutions or public institutions of learning the rule is less severe. We are inclined to agree with counsel for the exceptor that some degree of leniency should be exercised when the beneficiary has an interest wholly for public charity or a public institution of learning. Our position in this respect is fortified also when we consider a matter of public policy which is binding upon the courts. When this court was a boy and attending public school in a little brick school house in the corner of a woods in northwestern Ohio, I was compelled to memorize a portion of Article 3 of the Ordinance of 1787, which portion is in words as follows:

"Religion, morality, and knowledge, being necessary to good government and the happiness of mankind, schools and the means of education shall forever be encouraged."

Upon an examination of this famous document we find that this provision is binding upon the states carved out of the territory governed by that ordinance, and is so generally recognized by the Courts as to be a part of our public policy. The rule announced by the Tax Commission is a rule of construction and when a rule of construction conflicts with a matter of public policy the latter shall prevail. In other words, wills creating bequests to a public institution of learning should not be so considered as to discourage generous-hearted citizens in leaving a part of their earnings at least for the benefit of those institutions and for the promotion of the cause of education thereby.

We therefore reach the conclusion that the bequest to Kenyon College with the protection thrown around it by the testatrix comes within the operation of §5334 GC, and is therefore not subject to the inheritance tax. The exceptions are therefore sustained and an order may be drawn accordingly.